# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LISA BARNES-ATTERBERRY, Guardian for AMR, a Minor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 17-cv-00403-JPG-CJP<br>)<br>) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM & ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Lisa Barnes-Atterberry, on behalf of AMR, a minor, seeks judicial review of the final agency decision denying AMR's application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for SSI on behalf of AMR in 2007. (Tr. 179-85). In 2008, the agency determined that AMR suffered from a disability as of October 2007. (Tr. 21). The agency reviewed AMR's case in 2014 and determined she no longer suffered from a disability as of May 2014. (Tr. 98-102). This determination was upheld on reconsideration and plaintiff requested an evidentiary hearing. Administrative Law Judge (ALJ) Stuart Janney conducted a hearing in January 2016 and issued an unfavorable decision thereafter. (Tr. 21-42). The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final agency decision. (Tr. 1-6). Plaintiff exhausted her administrative remedies and filed a timely Complaint in this Court. (Doc. 1).

### Plaintiff's Argument

Plaintiff asserts that the ALJ erred in evaluating a treating source's opinion. She also contends the ALJ erroneously held that AMR had less than marked limitations in domains of "Attending and Completing Tasks, Interacting and Relating to Others, and Caring for Yourself."

**Applicable Legal Standards**

To qualify for SSI, a child must be disabled within the meaning of the applicable statutes. "An individual under the age of 18 shall be considered disabled" if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Regulations set forth a three-step analysis for this assessment. 20 C.F.R. § 416.924(a). The Seventh Circuit has explained the process as follows:

> First, if the child is engaged in substantial gainful activity, the ALJ will deny the claim. Second, if the child does not have a severe medical impairment or combination of impairments, then she is not disabled. Third, the child's impairments must meet, medically equal, or functionally equal any of the listings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*Jelinek v. Astrue*, 662 F.3d 805, 809-10 (7th Cir. 2011).

To determine whether an impairment or combination of impairments functionally equals the listings, the ALJ assesses a claimant's functioning using six domains: Acquiring and Using Information; Attending and Completing Tasks; Interacting and Relating with Others; Moving About and Manipulating Objects; Caring for Yourself; and Health and Physical Well-Being. If the claimant is markedly limited in two domains or extremely limited in one domain, the claimant functionally equals the listings. 20 C.F.R. § 416.926a(d).

Once a child has been awarded benefits, the agency undertakes a periodic review of continued eligibility to receive benefits. 20 C.F.R. § 404.1594a. The agency first considers whether there has been medical improvement of the child's impairment(s). 20 C.F.R. §

404.1594a(a)(1). "Medical improvement is any decrease in the medical severity of [a child's] impairment(s) which was present at the time of the most recent favorable decision that [they] were disabled or continued to be disabled." 20 C.F.R. § 404.1594a(c). If there has not been any medical improvement, the child remains disabled. 20 C.F.R. § 404.1594a(b)(1). If there has been medical improvement, the Commissioner considers whether the impairment(s) the child had at the most recent favorable decision still meets or equals a listing. 20 C.F.R. § 404.1594a(b)(2). If the child's impairment(s) no longer meets or equals a listing, the Commissioner then considers whether the child has any other severe impairment(s) that meets or equals a listing. 20 C.F.R. § 404.1594a(b)(3).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The ALJ's Decision

The ALJ determined that at the time of the last favorable decision, AMR had medically determinable impairments of speech and language delays. He opined medical improvement occurred as of May 1, 2014 and AMR's impairments did not functionally equal a listing as of that date. The ALJ opined that as of May 1, 2014, AMR had severe impairments of attention deficit hyperactivity disorder (ADHD), opposition defiant disorder (ODD), personality disorder, autism spectrum disorder, history of chromosomal disorder, history of developmental delays, and insomnia. (Tr. 24-32). ALJ Janney found none of these impairments or combination of impairments met, medically equaled, or functionally equaled any of the listings. Thus, AMR's disability ended on May 1, 2014 and she had not become disabled since. (Tr. 33-42).

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the plaintiff's arguments.

**1. Agency Forms**

Plaintiff completed a continuing disability form in January 2014. AMR was born in 2003. Plaintiff indicated AMR had a personality disorder and mood and anger issues. AMR could not stay focused and needed repetitive instruction. She could not deliver telephone messages, tell jokes, explain why she did something, or use sentences with "because," "what if," or "should have been." She could not read and understand simple sentences or stories in books. AMR could not write in longhand or write a simple story with six sentences. AMR could not understand money or tell time. She could not use roller skates, swim, or work video game controls. AMR was very clumsy, fell down, and ran into things. AMR had no friends her age and generally did not get along with adults or schoolteachers. She liked to fight and argue.

AMR could not bathe without assistance and she did not put away toys, hang-up clothes, help with chores, do what she was told, obey safety rules, or accept criticism. AMR needed continual supervision. She could not be left unattended with smaller children because she yelled at them and knocked them down. In September 2013, AMR used matches to light a couch and floor on fire. (Tr. 206, 217, 220-26).

AMR's fourth-grade teacher completed a questionnaire in March 2014 that consisted of five domains: Caring for Herself; Moving About and Manipulating Objects; Interacting and Relating with Others; Attending and Completing Tasks; and Acquiring and Using Information. The teacher opined AMR had no problems with functions associated with Acquiring and Using Information. AMR had the following problems with Attending and Completing Tasks: slight problems focusing, carrying out multi-step instructions, completing assignments, and working at a reasonable pace; and obvious problems with organization. AMR had no problems with functions associated with Interacting and Relating with Others, Moving About and Manipulating Objects, or Caring for Herself. AMR's teacher stated, "[AMR] seems to be a normal fourth grade student. She is bright, has friends and is quite helpful. There are no concerns about academics or socialization at school." (Tr. 243-51).

In March 2014, AMR's prior speech therapist wrote,

[AMR] was dismissed from articulation therapy 3 years ago. She was working only on 'th' which she corrected. There were no further speech or language concerns expressed by any subsequent teacher. She was in the top quarter of her class when I dismissed her 3 years ago. There are no speech & lang. concerns.

(Tr. 255).

Plaintiff completed another disability form in August 2014. She indicated AMR developed a personality disorder and had an alternative personality named Guinevere. She was mean to animals and kicked her cat. She took medication to control her outbursts and needed

5

medication to sleep. She rocked back and forth in her bed all night. She wet her bed until the previous summer. (Tr. 277-78).

## 2. Evidentiary Hearing

ALJ Janney conducted an evidentiary hearing in January 2016, at which plaintiff was represented by counsel. AMR was also present.

AMR testified she was twelve years old and in sixth grade. She was able to recall her birthday. AMR said other children at school had called her names for a long time. She did not get along with her cousins or little brother. Her favorite school subject was science. She liked to learn about animals. AMR had pet cats and sometimes helped feed and water them. She helped her little brother with homework. AMR took medication to control her "attitude," which helped a "little." Sometimes she was mean and yelled at her little cousins. AMR did not know who Guinevere was. She had a best friend who she liked to spend time with. AMR went to the skating rink. She had a hard time falling asleep and did not sleep a lot. (Tr. 56-67).

Plaintiff also testified. She stated she had custody of AMR since AMR was one year old. AMR did not have contact with her biological parents. AMR's grades had been slipping but plaintiff believed AMR was actually a smart child whose behavioral issues negatively affected her academic performance. AMR attended early intervention services until she was five years old and attended special education pre-Kindergarten. Standardized tests showed AMR was slightly below the average for other children in her school district. Plaintiff was not concerned about AMR's ability to read, write, or learn math. AMR worked better by herself because she lost focus around others. Pediatricians recommended AMR continue with her daily medications for attention problems. AMR got angry when someone expressed an idea contrary to hers. AMR's teachers described AMR as an outcast. She had never had a friend spend the night and

had never been invited to a sleepover. AMR did not play nicely with the other children she lived with and argued with the bus driver. Plaintiff had to repeat instructions several times for AMR to comply. AMR was not independent in activities of daily living and did not have an appropriate understanding of right and wrong. AMR saw a psychiatrist every three months. She took Dexedrine Spansule twice a day and Risperdal four times a day. The medications somewhat helped control her mood and outbursts. (Tr. 68-86).

AMR had an alternate personality named Guinevere. When Guinevere "appeared," AMR would put a headband on, flip her hair back, and talk and act differently. Guinevere first came around three years prior. AMR liked to play with dolls. She would talk to the dolls and answer herself. (Tr. 86-87).

### 3. Medical Records

AMR was evaluated by Southern Illinois University's Center for Autism Spectrum Disorder on August 7, 2007. The examiner did not suspect autism spectrum disorder at that time but referred AMR for lead screening. The examiner also recommended AMR's placement in a local school district for therapy services and classroom placement. (Tr. 382-85).

In October 2007, plaintiff underwent a test for Fragile X that returned normal findings. (Tr. 417-21).

AMR treated with Dr. Naeem Qureshi, a psychologist, from October 2007 through May 2014. On October 10, 2007, Dr. Qureshi observed AMR was well groomed, cooperative, and had a full range of affect. Her psychomotor traits, speech, perception, and though process were normal and her thought content was unremarkable. AMR's GAF score was fifty. Dr. Qureshi diagnosed AMR with ADHD. (Tr. 515). On October 31, 2007, Dr. Qureshi noted AMR had delayed sleep onset, an increased appetite, and a high energy level. She was extremely

7

hyperactive and constantly moving. Dr. Qureshi observed AMR was well groomed, cooperative, and had a tense affect. Her speech, though process, and perception were normal and her thought content was unremarkable. Dr. Qureshi diagnosed AMR with ADHD and prescribed Adderall. (Tr. 512-13). On November 13, 2007, Dr. Qureshi noted AMR was "still hyperactive." Her speech was "mumbled" but she appeared adequately groomed, was cooperative, had normal psychomotor traits, perception, and though processes, and her though content was unremarkable. Dr. Qureshi diagnosed AMR with ADHD and prescribed Adderall. (Tr. 510-11).

On January 7, 2008, AMR underwent a speech and language evaluation upon referral from the Bureau of Disability Determination Services. AMR required moderate prompts to participate and cooperate. AMR had reduced attention and needed frequent redirection. Testing revealed AMR was severely impaired in areas of articulation, receptive language, and expressive language; moderately to severely delayed in pragmatic skills; within functional limitations for voice and fluency; and was unable to condition to pure tone screening. The speech pathologist opined, "[AMR's] speech & language deficits will impair her ability to achieve academically, communicate effectively with others, and enter the work force eventually if not adequately trained." (Tr. 558-62).

AMR underwent a psychological consultation on January 24, 2008. Testing demonstrated that AMR had a pattern of low normal intelligence compared to the norms for her age group. She had a receptive language level at two-years and eight-months old, about one and a half years below age expectancy. The psychologist diagnosed AMR with mild to moderately severe phonological disorder and ADHD. AMR had a GAF score of 53. (Tr. 565-68). On January 29, 2008, a state-agency consultant determined AMR had speech and language

delays that functionally equaled a listing. AMR was markedly limited in domains of Acquiring and Using Information and Interacting and Relating with Others. (Tr. 570-75).

On November 11, 2010, a genetic testing report indicated "unclear clinically significant abnormalit[ies]." (Tr. 580).

On February 8, 2011, Dr. James Pavlovich authored a letter stating AMR had attention deficit disorder and explosive personality problems. She also had chromosomes that suggested a chromosomal abnormality called interstitial deletion, which may have been associated with explosive personality. Dr. Pavlovich believed AMR should stay in special services at school. (Tr. 577).

AMR's genetic counselor opined on February 10, 2011 that AMR should continue therapy services through school due to her history of developmental delays and chromosomal abnormality. (Tr. 579).

On February 1, 2013, AMR presented to Dr. Pavlovich. She was not sleeping well or cooperating with family, friends, or teachers. She "got mad." Dr. Pavlovich assessed AMR with ADHD and advised plaintiff to continue taking AMR to Dr. Qureshi. (Tr. 589-93).

AMR saw Dr. Qureshi on March 12, 2013. Plaintiff reported AMR had behavior problems and was defiant and noncompliant. On examination, AMR was well groomed, cooperative, and friendly. She maintained good eye contact, demonstrated a normal level of activity, and her speech was normal in volume and tone. AMR had a full range of mood that was congruent and she exhibited coherent, organized, and logical thought processes. She was able to stay focused during the sessions and her cognition appeared to be grossly intact and at a baseline level. Her insight and judgment were good. Dr. Qureshi diagnosed AMR with ADHD and a

9

GAF score of 60. He also assessed AMR with oppositional defiant disorder and insomnia. (Tr. 601-05).

AMR followed-up with Dr. Qureshi on August 14, 2013. Plaintiff stated AMR was having fewer problems. She was less hyperactive, more manageable, and had normal sleep patterns. On examination, AMR was well groomed, cooperative, and friendly. She maintained good eye contact, demonstrated a normal level of activity, and her speech was normal in volume and tone. AMR had a full range of mood that was congruent and she exhibited good insight and judgment. She was able to stay focused during the session and hear cognition appeared to be grossly intact and at a baseline level. Dr. Qureshi diagnosed AMR with ADHD and a GAF score of 70. He also assessed AMR with oppositional defiant disorder and insomnia. He prescribed AMR Dexedrine Spansule. (Tr. 606-09).

On February 26, 2014, plaintiff reported to Dr. Qureshi that AMR was doing better. She was less hyperactive and more manageable. AMR had normal sleep patterns. She maintained good eye contact, demonstrated a normal level of activity, and her speech was normal in volume and tone. AMR had a full range of mood that was congruent and she exhibited good insight and judgment. She was able to stay focused during the session and hear cognition appeared to be grossly intact and at a baseline level. Dr. Qureshi diagnosed AMR with ADHD and a GAF score of 70. He also assessed AMR with oppositional defiant disorder and insomnia. Dr. Qureshi prescribed AMR Dextroamphetamine. (Tr. 610-13).

State agency consultant Dr. Donald Henson completed a childhood disability evaluation form on May 7, 2014. Dr. Henson opined AMR had no limitations in any of the domains. Speech language pathologist Nikki Arends also evaluated plaintiff. Ms. Arends opined plaintiff had no limitations in Acquiring and Using Information and less than marked limitations in

Attending and Completing Tasks, Interacting and Relating with Others, Moving About and Manipulating Objects, and Health hand Physical Well-Being. AMR had marked limitations in the domain of Caring for Yourself. (Tr. 614-25).

AMR saw Dr. Qureshi on May 20, 2014. Plaintiff reported AMR was having problems but was less hyperactive and more manageable. AMR had normal sleep patterns and her appetite was improved. She maintained good eye contact, demonstrated a normal level of activity, and her speech was normal in volume and tone. AMR had a full range of mood that was congruent and she exhibited good insight and judgment. She was able to stay focused during the session and her cognition appeared to be grossly intact and at a baseline level. Dr. Qureshi diagnosed AMR with ADHD, oppositional defiant disorder, autism spectrum disorder, and a GAF score of 50. He also assessed AMR with insomnia. Dr. Qureshi prescribed AMR Dexedrine Spansule. (Tr. 630-33).

AMR presented to Dr. Pavlovich on May 23, 2014. She was oriented to time, place, person, and situation and behaved appropriately for her age. Dr. Pavlovich prescribed AMR Metadate CD. (Tr. 641-44).

State agency consultant Michelle Curran, a speech language pathologist, completed a childhood disability evaluation on September 29, 2014. Ms. Curran opined AMR had no limitations in any of the domains. State agency consultant Dr. Glen Pittman completed a childhood disability evaluation on October 3, 2014 and opined AMR had less than marked limitations in Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Yourself. AMR had no limitations in the remaining domains. (Tr. 647-59).

AMR followed-up with Dr. Pavlovich on July 30, 2015. Dr. Pavlovich assessed AMR with ADHD and personality disorder and prescribed Risperdal. (Tr. 661-68).

Dr. Lukasz Dabrowski[1] completed a medical source statement on January 5, 2016. He indicated AMR often failed to pay close attention to details, had difficulty sustaining attention in work and play, did not seem to listen when spoken to directly, often did not follow through on instructions and failed to finish tasks, often had difficulty organizing tasks and activities, often avoided, disliked, or was reluctant to engage in tasks that required sustained mental effort, often lost things, was easily distracted by extraneous stimuli, and was often forgetful. Dr. Dabrowski also opined AMR had severe inattention, impulsiveness, and hyperactivity. Her cognitive and communicative functions were at two-third of her age and her social function was at half or less of her age. She was markedly limited in Social Functioning, Interacting and Relating with Others, and Caring for Herself; moderately limited in Personal Functioning; and extremely limited in Deficiencies of Concentration, Acquiring and Using Information, and Attending and Completing Tasks. (Tr. 683-86).

AMR visited the Genetics Clinic at Cardinal Glennon Hospital on August 13, 2014. She was enrolled in regular classes, enjoyed math and science, and did very well when she did her homework. Plaintiff was encouraged to reinforce positive behaviors and follow up with psychiatry and genetics in two years. (Tr. 689-90).

## Analysis

Plaintiff contends the ALJ erroneously assessed the opinion of AMR's treating source, Dr. Dabrowski, who opined AMR was markedly and extremely limited in several domains.

The Social Security Regulations require an ALJ to afford controlling weight to a treating source's opinion so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527.

---

[1] The ALJ's opinion and the plaintiff's brief incorrectly refer to Dr. Lukasz Dabrowski as Dr. Lukase Dabronski.

12

As with all of the ALJ's conclusions, the ALJ must "minimally articulate" his analysis for withholding controlling weight from a treating source's opinion. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). The ALJ satisfies this standard when he builds a logical bridge between the evidence and his conclusion, which permits the Court to follow the ALJ's reasoning and provide a meaningful review. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

ALJ Janney assigned Dr. Dabrowski's report "no weight" because Dr. Dabrowski did not provide any support for his opinions. Although the ALJ's analysis is brief, so is the evidentiary record related to Dr. Dabrowski's treatment of AMR. Dr. Dabrowski's report, dated January 5, 2016, is the single medical record in evidence from the source. Moreover, it is a checkbox-style standard report and is unclear as to whether Dr. Dabrowski actually evaluated AMR and, if so, what techniques he applied in reaching his opinion. As the ALJ stated, Dr. Dabrowski "checked boxes indicating that these assessments were based on medical findings or standardizes tests. However, the record contains no such medical findings or standardized tests."

The Court is able to follow the ALJ's reasoning. An ALJ may deny controlling weight to a treating source's opinion if it is either unsupported or inconsistent, and the ALJ here logically explained that Dr. Dabrowski's report is unsupported. Therefore, substantial evidence supports the ALJ's determination.

The ALJ's duty to evaluate a treating source's opinion, however, does not end there. Once an ALJ finds that an opinion is inconsistent or lacks support, he must decide what weight to assign the opinion in consideration of the following factors: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; and (5) the physician's specialization. 20 C.F.R. § 404.1527.

Plaintiff argues the ALJ's evaluation of the medical evidence was erroneous because he did not apply these factors to Dr. Dabrowski's report. However, given the dearth of records from Dr. Dabrowski, it would be virtually impossible to do so. Dr. Dabrowski's name appears on one other record: a call log from SIH Medical Care documenting plaintiff's inquiry about a lice outbreak at her children's school. (Tr. 663). Every other record from SIH lists Dr. Pavlovich as AMR's treatment provider. Plaintiff, herself, does not elaborate on any of the factors or how they are favorable to Dr. Dabrowski's credibility.

Additionally, the ALJ did apply the factors for which he had information to make an assessment. As explained above, the ALJ explored the supportability of Dr. Dabrowski's report as well as the report's consistency with other evidence. Plaintiff maintains the ALJ improperly concluded that the report was inconsistent with the record as a whole. However, substantial evidence supports the ALJ's opinion. As ALJ Janney opined, the records from AMR's teacher, healthcare providers, and the state-agency consultants do not suggest AMR had such severe impairments as Dr. Dabrowski opined in his report. For example, Dr. Qureshi assigned AMR with GAF scores as high as seventy and consistently noted that AMR was cooperative, had a full range of affect, and exhibited normal psychomotor traits, speech, perception, and though processes and content. AMR's speech pathologist expressed no concerns in regards to her speech and language skills. Additionally, AMR's teacher described AMR as a "normal fourth grade student" who was "bright," had friends, and was "quite helpful." The teacher expressed "no concerns about academics or socialization." Plaintiff argues the ALJ erred in relying on the teacher's statements because the teacher is not a medical source. However, the Regulations provide that a medical opinion is given more weight when it is consistent "with the record *as a whole*" and not just with other medical evidence. 20 C.F.R. § 404.1527(c)(2)(ii)(4) (emphasis

added). In sum, the ALJ properly assessed Dr. Dabrowski's opinion against the factors to the extent he was able, given the lack of records related to Dr. Dabrowski's treatment of AMR.

Plaintiff next argues the ALJ erred in determining AMR's limitations in the domains of Attending and Completing Tasks; Interacting and Relating to Others; and Caring for Yourself. Plaintiff, however, does not identify any evidence the ALJ omitted or point to any other errors in the ALJ's analysis. Rather, plaintiff summarized the evidence that is favorable to a finding of disability and argues the ALJ should have reached a different conclusion. This, however, is not a valid basis for reversing an ALJ's decision. "When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence. . ." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010).

The ALJ explained AMR had less than marked limitations in Attending and Completing Tasks and in Interacting and Relating to Others based on teacher reports and Dr. Qureshi's observations. The ALJ opined AMR had less than marked limitations in Caring for Yourself based on Dr. Qureshi's finding that AMR had good insight and judgment, along with the fact that AMR attended regular school classes, which indicated age-appropriate self-help skills. Overall, substantial evidence supports ALJ Janney's assessment of AMR's limitations in each domain.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE: MARCH 27, 2018**

                                                      *s/ J. Phil Gilbert*
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**